IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 13 CR 679 |
| v. | ) | |
| | ) | Judge Charles P. Kocoras |
| WESLEY MCQUERRY | ) | |
| | ) | |

## POSITION PAPER FOR SENTENCING

WESLEY MCQUERRY, by the Federal Defender Program and its attorney, PAUL FLYNN, respectfully submits that the correct adjusted guideline offense level is actually 15 with a criminal history category of III resulting in a guideline range of 24 to 30 months. He concurs with the PSR's conclusion that two points should not be added to his offense level for abuse of trust for the reasons outlined in the PSR.

He further maintains that for the reasons contained in the section entitled "FACTORS THAT MAY WARRANT DEPARTURE" on page 22 of the PSR the amount of loss attributable to him is actually more than $120,000.00 but less than $200,000.00. While he concurs with the report writer's conclusion that these are grounds for departure based on the arbitrary assessment of all the monies paid to the supervising physician's as part of the actual loss he also maintains that the government has failed to prove by a preponderance of the evidence that that amount should be included in the loss amount attributable to him in the first place. This is especially true in that according to the government's calculations the amount of loss is only approximately $90.00 more than the next lower loss range.

Mr. Mcquerry respectfully requests a below guideline sentence within the court's discretion. A below guideline sentence with a component of house arrest or community confinement would be sufficient, but not greater than necessary, to comply with the sentencing goals set forth in 18 U.S.C. 3553 and allow him to maintain gainful employment to make his restitution.

### ARGUMENT

The Sentencing Guidelines define "loss" as the "greater of actual loss or intended loss" (USSG § 2B1.1, cmt. n. 3(A)) and provide that the sentencing judge "need only make a reasonable estimate of the loss." USSG § 2B1.1, cmt. n.3(C). Actual loss refers to the reasonably "foreseeable pecuniary harm that resulted from the offense" whereas "intended loss (1) means the pecuniary harm that was intended to result from the offense. Here the parties are proceeding on a theory of actual loss.

The application notes to the Guidelines § 2B1.1 outline a number of general methods for calculating loss. In addition to using "the reasonable pecuniary harm that resulted from the offense," *Id.* at cmt. n.3(A)(i), the methods for calculating or estimating loss include, among others:

> "The fair market value of the property unlawfully taken or destroyed or, if the fair market value is impractical to determine or inadequately measures the harm, the cost to the victim of replacing that property." *Id.* at cmt. n.3(C)(i)
>
> "In the case of proprietary information (e.g., trade secrets), the cost of developing that information or the reduction in the value of that information that resulted from the offense." *Id*. at cmt. n3(C)(ii).

2

Whatever method is chosen to calculate the loss, the government's calculation need not be absolutely certain or precise. USSG § 2B1.1, cmt. n.3(C). When calculating the intended loss, absolute accuracy is not required so long as the calculation is not "outside the realm of permissible computations." *United States v. Lopez*, 222 F.3d 428, 437 (7th Cir. 2000).

A court does not commit "clear error" so long as a loss calculation is supported by presumptively reasonable facts from the presentence report and the defendant fails to rebut those facts. *United States v. Al-Shahin,* 474 F.3d 941 (7th Cir. 2007). However, the court must develop some evidence to support a loss figure rather than settle on an arbitrary number that is not supported by any findings. *United States v. Higgins*, 270 F.3d 1070 (7th Cir. 2001). In *Higgins,* the court overruled a sentence enhancement, holding that the sentencing judge made insufficient findings regarding loss. *Id.* at 1075. This was due to the fact that the enhancement was based on "vague reasoning" that failed to indicate whether the court actually believed that the defendant *intended* to deprive a bank of the estimated amount of money. *Id.*

The case law in the Seventh Circuit does not address the specific details of McQuerry's factual basis for the offense but case law from other circuits might help the court in ascertaining the best approach to calculate the amount of loss attributable to McQuerry. These cases however in the context of theft of trade secrets. Of course in this case Mcquerry did not steal any trade secrets because the study did not produce any. It is the cost of the study itself which is in issue.

3

Research and development costs may be used to estimate loss when there is no verifiable "fair market value" for a product. *United States v. Wilson*, 900 F.2d 1350 (9th Cir. 1990). In *United States v. Wilson*, a mail fraud case, the 9th Circuit held that the trial court was entitled to value the documents that the defendant, an employee of a biotechnology and pharmaceutical firm, had offered to sell to a competitor using the research and development costs relating to the information contained in the documents. *Wilson*, 900 F.2d at 1350.

However, the court did not hold the defendant to the *entire* research and development costs. The company had estimated that the research and development costs totaled $8 million; the trial court reduced this figure by half because approximately half of the material was protected by patent and, thus, valueless to a non-patent holder. *Id.* at 1356. The court then further reduced the total to $1 million in order to give the defendant "the benefit of every doubt arising from the 'ball park estimate' of value provided by the company. .." *Id.*

Similarly, in *United States v. Kwan*, the court determined that stolen documents exceeded the statutory minimum of $5000 based on the salaries of those who created the documents and the amount of time that they would have spent gathering the information and creating the documents. *Kwan*, No. 02 CR.241(DAB), 2003 WL 22973515 (S.D.N.Y. Dec. 17, 2003). The evidence showed that the defendant and other employees "spent a large amount of time in compiling, drafting, and revising [the] documents and that a significant portion of two employees' jobs were devoted to the production of [the]

4

documents." *Id.* at 9. The court concluded that a jury could reasonably infer from the costs of production that the value of the stolen documents easily surpassed the jurisdictional threshold. *Id.*

In cases where there are a number of different possible "estimates" of loss, research and development costs may provide a more concrete or reliable indication of an amount of loss. In *United States v. Ameri*, the defendant stole his employer's proprietary software, which evidence showed was at the heart of a $10 million dollar contract but had no verifiable market value because it was not available separately. *Ameri,* 412 F.3d 893, 900 (8th Cir. 2005). An employee of the contractor estimated that the fair market value of the software as $1 million. *Id.* at 900. The court also heard evidence that the defendant had offered another person $200,000 to participate in the fraudulent use of the software. *Id.* Ultimately, however, the court was most persuaded by evidence indicating the number of hours spent by employees working on the software, equipment costs and other expenses relating to the development of the information. *Id*

Although the Guidelines indicate that the court may estimate the intended or actual loss incurred by a plaintiff, research and development costs must be based on specifically enumerated actual expenditures and be tailored to the defendant's actual conviction. *United States v. Yan Zhu,* CRIM. 09-00722 JAP, 2012 WL 359734 (D.N.J. Feb. 2, 2012). In *Yan Zhu*, the defendant was acquitted of theft of trade secrets but convicted of "defrauding enfoTech," a software developer, "of 'proprietary and confidential' business documents." *Id.* at 1.

Both the Government and the defense based their estimates of loss on research and development costs. The court held that the Government failed to prove by a preponderance of the evidence that enfoTech had suffered any loss because the evidence was prepared by a witness whom the Court did not find to be credible (the record is not clear *why* the witness was not credible, although it mentioned that he was the co-owner of enfoTech and that two of the three loss estimates that he presented in his testimony had been prepared specifically for trial). *Id.* The court also criticized the Government's estimate of loss because it lacked objectivity and "improperly include[d] the development cost of the *completed* software." *Id.*

Similarly, in *United States v. Yang*, the court required that the government definitively produce research and development costs for the adhesive formulas that were misappropriated by the defendants. *Yang,* 281 F.3d 534 (6th Cir. 2002). Initially, the estimated value of the formulas was thought to be $50-$60 million. The court rejected each proposed valuation, which included historical research and development costs and a "reasonable royalty" method, which was calculated by examining the current sales figures of the adhesive described in the patent application, the expected duration of the sales, and royalty rates typically paid for the use of similar technologies.

The government was only able to prove by a preponderance of the evidence the costs of development for one of the formulas, resulting in a 13-level adjustment to the defendant's guideline range. The Government introduced an expert witness who used a cost-averaging model to estimate the costs of all of the stolen formulas. The court

6

rejected the government's average model as imprecise. Since the court found that the government had failed to prove the amount of the plaintiff's loss for the remaining formulas, it only elected to further increase the defendant's offense level by one, recognizing that the total value of the stolen information was greater than the value of a single formula.

In this case the government has not made an adequate showing that all the monies paid to Dr. Berger in this case were actually spent supervising McQuerry or attributable in some other way to this particular study. They have not even shown that these monies were all paid during McQuerry's involvement with the study. Given the fact that the doctor was simultaneously supervising eleven such studies and at the hourly rate that a physician earns merely accepting this number without a detailed accounting of why the monies were attributable to McQuerry's study is not appropriate.

The government has not made a sufficient showing by a preponderance of the evidence that all of the monies paid to Dr. Berger were attributable to McQuerry's loss amount. This is especially true where the twelve point enhancement requested by the government is only $90.00 above the guideline range requested by the defendant and the PSR writer has concluded that there was actually very little supervision of McQuerry by Dr. Berger. In the alternative the defendant agrees with the PSR writer that a two point downward departure would be appropriate because the amount of loss is overstated by the inclusion of all the monies paid to Dr. Berger in McQuerry's loss amount.

## CONCLUSION

The use of research and development costs to estimate loss is permissible under the Guidelines. However, the Government must produce sufficient detailed evidence of specific expenditures – such as hours worked by employees, costs of resources, etc – to support its figure. This estimate may not be based on an arbitrary number simply because at some point the company paid that much money to Dr. Berger. This is especially true where the PSR writer concludes that his lack of oversight was a contributing factor to the total loss amount.

Mr. Mcquerry respectfully requests a below guideline sentence within the court's discretion. A below guideline sentence with a component of house arrest or community confinement would be sufficient, but not greater than necessary, to comply with the sentencing goals set forth in 18 U.S.C. 3553. It would also allow him to continue with gainful employment and begin paying restitution.

                Respectfully submitted,

                FEDERAL DEFENDER PROGRAM
                Carol A. Brook
                Executive Director

By:   */s/ Paul Flynn*
       Paul Flynn
       FEDERAL DEFENDER PROGRAM
       55 East Monroe Street, Suite 2800
       Chicago, IL 60603
       (312) 621- 8300

## **CERTIFICATE OF SERVICE**

The undersigned, Paul Flynn, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

### **POSITION PAPER FOR SENTENCING**

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on January 23, 2015, to counsel/parties that are non-ECF filers.

By: */s/ Paul Flynn*
Paul Flynn
Federal Defender Program
55 East Monroe Street, Suite 2800
Chicago, IL 60603
(312) 621-8300